Turn to our next case is Lilly v. The City of New York. May it please the court, Alina Druker on behalf of the city. Can you just move that microphone a little closer to you? You can lower that lectern if you need to. Thank you. You see there's a button there. We'll give you your time back. Thank you. We'll make it more comfortable for you. Thank you very much. Okay. Alina Druker on behalf of the city. Your Honor, Mr. Lilly accepted a Rule 68 offer that said that he was accepting $10,001 plus reasonable attorney's fees, expenses, and costs to the date of this offer. The language isn't up for debate. It fairly clearly waives any fees that accrued after the date of that offer. Then why didn't you just pay the $30,000 that he had incurred up to that date? The reasonable attorney's fees is a discussion that was left on the table. You offered $8,000, right? I think that we offered . . . ultimately the number was $7,000 a part or so. Initially it was $8,000, wasn't it? I think that's correct, yes, Your Honor. We offered some amount. I think that was reflective of our attorney's hours. I think that the parties got together. They negotiated until a point where they were several thousand dollars apart. At that point, Lilly had an option. He could have either gone to the court and sought further fees, sought a resolution, or they could have continued negotiating. The only operation of the Rule 68, though, is that it cut off any attorney's fees that accrued after that date. The offer of judgment. The offer of judgment, yes. Plus reasonable attorney's fees and costs to the date of this offer, but it didn't say the amount. What are you supposed to do if you don't know what the pig in the poke is? That's exactly what we do in any case. We negotiate the attorney's fees after that point. The Rule 68 offer settled the case and left the reasonable attorney's fees. We were reasonable, as the district court found. It doesn't matter. In this case, we were reasonable and negotiated in good faith. There was no suggestion of any impropriety. The point is then that the plaintiff . . . As a matter . . . But the district court awarded far more than the $8,000, right? It was for the time up to the acceptance of the offer of judgment was $20,000 that the district court ordered, right? I think . . . right. Absolutely. What the district court ordered . . . I would say that as a matter of law, there was an error. $8,000 of the award is in error as a matter of law because it was not available under the order, under the fees on fees. Let me talk about the $20,000. As I understand it, the total amount awarded by the district court was $27,000 and change. Of that, $20,000 were for up to the time that the offer of acceptance was accepted was $20,000 and then the fees on fees was $7,000 after that. Those are kind of ballpark figures. Is that right? That sounds right. Right. I'm not sure what the . . . You said the district court agreed with you. The district court didn't agree that $8,000 was right? No, no, no. I'm not saying the district court agreed with our figure. I'm sorry, Your Honor. What I'm saying is that what Mr. Lilley agreed to was to cut off fees on fees. In this case and many other cases, we have this language in the offer and it cuts off fees on fees. That means that what the plaintiff's attorney can then do and can go to court just like he did here and seek judicial resolution of the fee amount of the reasonable attorney fee up to the date of the offer and the court can then assist if the parties are unable to come to resolution. If they're operating in good faith, that's what happened here. They operate in good faith. They come to the table and they're unable to set the amount. The court can assess what the fees that were accrued up until the date of the offer and award them. That's exactly the right procedure. The error of law was to award . . . He's got to go to court. He's got to file these papers. He's got to file the affidavit. He's got to file his time records, he or she. I'm not saying he acted in bad faith, but I'm just saying what are you supposed to do when you submit a bill for $30,000 and the city says we'll only give you $8,000? I think that exactly what . . . The ultimate number they got to before they went to the court was higher than that. I think that that was the entry. That smacks of unreasonable. Perhaps once they saw the amount, they got down to a closer number, but more to the point, that puts the litigant in the same shoes as every other litigant in the American system, which is they bear their own costs for the fee litigation. What the Rule 68 Offer of Judgment gave Mr. Lilly . . . The 1988 fees were cut off as of the date of the offer. Mr. Lilly accepted a $10,000 in one settlement. As part of that, he waived any fees that would accrue after the date of that offer, and that was a right that belongs to him. The Supreme Court said it in Merrick and in Evans that the civil rights litigant owns those fees, and he is allowed to negotiate those away in order to secure a more favorable settlement, and that's what he did. He took an offer for $10,001 for this garden variety case, and fees up until the date of the offer, maybe perhaps $20,000 to $30,000 worth, wherever we're in, but that cut off the fees. How did you come up with that range, $20,000 to $30,000? That's where the court . . . I mean, I think . . . How did you come up with the $8,000, by the way? My understanding is that was based . . . the initial offer was based on what the billing hours of my . . . as a trial counsel multiplied by a certain amount. They came . . . For your office. For our office, and then at some point or another, we got his fee. So, we got his billing records. We went back. We came . . . I think they offered $25,000 all in, which was $15,000 in attorney's fees, and then Mr. Rothman filed his attorney's fee application seeking more than that. The court cut him down significantly and raised the number and landed at a number roughly in the middle, and that's what the district court is . . . district court's magistrates do. But the question, though, is that as a legal matter, that small section, that little sliver, fees on fees is not available, is as part of the reasonable attorney's fee, because that little amount was waived in the offer of judgment. So, what was . . . There's a bigger question here, right, which is that 1988 encourages lawyers to take civil rights cases. That's why we have it, right? We do, yes. So that if the upshot of this is that you're not going to get anything after the date of the acceptance of the offer of judgment, which you have to accept in good faith, representing your client, if your client says $10,000 is enough for me, is that going to discourage plaintiff's lawyers from taking these cases? If there's a big fight with the City of New York over the $30,000, you're not going to get any of that. I understand. I think for a number of reasons, it's not. First of all, Section 1988's purpose is to facilitate civil rights litigation, to allow competent attorneys like Mr. Rothman to take these kind of cases. And that purpose is served. Mr. Rothman took this kind of case and is paid, compensated, for all of the cost that he incurred in bringing the case. The question is . . . Would he have taken it if he knew that he'd have to litigate . . . But for the fee litigation? Extensively over the amount of fee that he would get up to the cutoff date? I believe he would. But I think the point is that the small amount of money that we're talking about for the fee litigation, the city is bound by the offer of judgment, which is a contract, which is also entered with the court, to act in good faith and to be reasonable. And that's what the city was. We're reasonable. Your position, I guess, is that he doesn't get fees on fees because that was not part of the offer, and that we'll now discuss what the fees were up until the time of the offer. Absolutely. So there were exchanges made back and forth which did not pan out and went to the court for adjudication. Yes, that's right. And I thought we were . . . the question here was not so much what happened, how the settlement broke apart, but what the judge's determinations were, both on the side of fees on fees, which you think is inappropriate, and also on the amounts, which he thinks is inappropriate. I mean, to be clear, it's not that we think it's inappropriate. And the big difference here is that what we're saying is that there's an abuse . . . It wasn't part of it. Right. What Mr. Rothman's across-the-pound case is a complaint about the exercise of discretion, something that's reviewed for an abuse of discretion. What we're saying is that there was a legal error, one that's reviewed de novo, about reading these contractual terms, which clearly state that fees on fees are cut off, and superimposing on top of it a public policy concern that seems to . . . I mean, the language can't bear fees on fees. The language doesn't support it. So the only way to get there is to allow . . . to superimpose public policy concerns from Section 1988 that have been waived and that the Supreme Court has said are not appropriate in this context because Rule 68 doesn't work without . . . Rule 68 doesn't work in the civil rights litigation context if you don't allow the contract to be read as it has been, as the Steiner case said in this court. I take it that district courts in this circuit are kind of all over the lot . . . to award fees on fees in this kind of a situation. That's right. And it is an error of law to allow the courts that have gone against us on this. What they've done is they've ignored the terms, the clear terms of the agreement, and then they've said, inequity. That's what the court below here had said. Inequity, it makes sense for me to nonetheless impose fees on fees. But not only for the reasons we said in our brief, that equity doesn't support that. It's not supportive of public policy to inject uncertainty into a settlement process, which the Supreme Court has said is a process that applies in this context. But it's also unfair to Mr. Lilly. It's unfair to everybody involved. What they've done is they've come to an agreement about how to resolve this case, and then after the fact had the district court allow it, enter judgment, and then change it. It's just not legally permissible. It's not really a Rule 68 question. It's really a question about what the language of the offer of judgment was, right? In other words, we wouldn't be here today if he said $10,001 plus $30,000 in reasonable attorney's fees, which have been incurred to date, and that was accepted by him on behalf of his client. We wouldn't be here. So it's really just a contract issue, right? That's right. I mean, and that's why it's so inappropriate for the district courts to be changing the language of the contract to reflect a public policy concern that they've injected into it that I don't actually think is borne out by the ultimate calculation of the public policy, especially because, I mean, the language of the Rule 68 offer says reasonable attorney's fees. It exactly tracks Section 1988, which provides reasonable attorney's fees as part of costs. So what we've done is we have agreed to the reasonable attorney's fees to the date of this offer. It's clear in the contractual terms. The Steiner case from this group. Can we take your argument in your papers? Thank you, Your Honor. Mr. Rothman. Thank you, Your Honors, and may it please the Court. My name is Jeffrey Rothman. I represent the plaintiff in this action. If Your Honor would permit me, I would like to reserve two minutes for rebuttal on my cross-appeal issue. We don't do that, but we'll give you your full time now. Thank you, Your Honor. The defendants indeed made a Rule 68 offer that tracked the language and the context and the purposes of Section 1988. And implicit under Section 1988, whenever there are reasonable fees that are going to be determined, and they have to be determined through a fee application, there are fees on fees that are awarded. Why wouldn't that be specified in the contract? It's not in the contract. It's not in the offer. The offer could have read fees up to the present and any fees incurred in preparing for the application, but it didn't. The offer could have been phrased in a number of different ways, but the way that it was phrased tracked the framework of Section 1988. And implicit in that framework is that if there is going to be a fee application, that's necessary in order to get the fees. Remember, the fee application fees have to be reasonable just as the underlying fees have to be reasonable. If the defendants through their intransigence make it impossible for an attorney to get the reasonable underlying fees, and it becomes necessary thereby for the attorney to make the fee application, then if the attorney does not get the fees on fees, then the attorney is not able to get the underlying reasonable fees because they've been diluted with all of the public policy evils that are inherent in that, in not allowing attorneys to get their load star when they bring civil rights cases. So is your argument that you escaped the terms of the contract because of the city's bad faith in dealing with your reasonable fee application? I think the better approach, as I have suggested in my brief, is that the court not look to subjective bad faith versus good faith, but look at this objectively, as Judge Stroni was mentioning. If the attorney gets more for the underlying fees through the fee application, then it was ipso facto necessary to bring the fee application, and in that circumstance, fees on fees should be awarded. Because without bringing the fee application, the attorney could not have gotten the underlying fees that were owed. So I think . . . Weren't you on notice with this particular offer of judgment that you weren't going to get anything litigating a fee dispute? No. Maybe you were going to win with the district court more than the $8,000 it was offered to, like $30,000, but I kind of know that I'm on my own if I have to litigate this based on the language of the offer of judgment. No, Your Honor. I think the language of the offer, the only reasonable way to read it is one has to read a contract in the context in which the contract is made. And this contract was made in the context of 1988 in the civil rights case, tracking the language of Section 1988. But it says in the offer, to the date of this offer. How do you get around that? Because it says reasonable fees to the date of the offer, and if one has to have those fees be diluted through a subsequent fee application, then one is not getting one's reasonable fees to the date of the offer. One is getting . . . You're getting not reasonable from your perspective, but reasonable from the judge's perspective. Well, not reasonable from a judge's perspective because . . . No, but the judge reduced your fees based upon . . . assuming that if we found that that was reasonable, I know you're arguing that it wasn't, but if we found that what the judge did in terms of reducing the hourly rate and so forth, and the 10% reduction was reasonable, then you've gotten your reasonable fees up to the date of this offer, haven't you? Well, that's a separate issue which I'll get through in a moment. No, but I mean, you're saying that somehow that reasonable . . . in order to get reasonable attorney's fees, if the judge reduces your claim, that then you're entitled to fees on fees. Let me explain. Perhaps I was being not clear in my explanation. Go ahead. Set aside for a moment the rate issue. Yeah. If it . . . the Supreme Court has said in Perdue v. Kenny A that there is a strong presumption that the Lodestar represents a reasonable fee. So in order to get the reasonable fee, you have to get it based upon a Lodestar analysis. Now, if it becomes necessary through the defendants and transigents who are . . . even if it's not bad faith, but they just offer less than one eventually gets through a fee application, but one does not get paid for the work on the fee application, one is getting an artificially reduced amount for the underlying fees because it has been diluted through the unpaid work on the fee application. And there's cases that have been cited in our briefs that state that fees should not be diluted in that way and that defendants should not be permitted, particularly powerful or well-heeled defendants, to dilute attorney's fees because that's contrary to the public policies underlying Section 1988. Is there an ethical issue to . . . I'm sorry, Judge, I'm a little hard of hearing. Is there an ethical issue to at least kind of lurking here, which is say you get this offer of judgment from the city and your client says $10,001 is . . . I'll take it. And then you say, well, gee, but the offer doesn't let me get paid for any litigation of my reasonable attorney's fees, so I'm going to get kind of stuck here if they don't agree with me on my amount of reasonable attorney's fees. I think we should reject the offer. That's a problem, right, for your loyalty to your client? Well, there are always inherent tensions between attorneys and clients with regard to fees, with regard to accepting any settlement offer, whether it be under the Rule 68 context or just a regular settlement offer. But the reason why Rule 68 is such a powerful arrow in a defendant's quiver and why they make it so often early in the case is because it cuts off costs, including attorney's fees, from the date of the offer. So the real analysis that a plaintiff and his or her attorney engage in when a Rule 68 offer is made is, is there a reasonable likelihood that if we go to trial and win that we're not going to beat this offer? And that is really the fundamental consideration in whether or not . . . Your interest, can they diverge from those of your clients? Well . . . In other words, you know, your client says the $10,000 I think is fine, I think it's a good settlement, but then you're worried, gee, you know, are they going to fight me over the $30,000 that I've incurred so far for my attorney's fees and are they going to fight me over on the fees and fees issue? Well, the real issue, as I said, in that circumstance is if I thought that, you know, if we go to trial, the damages are such or the facts of the case are such that we might win a trial but not beat the offer. In that circumstance, a good lawyer would recommend to the client that he accept the offer, not only for his own interest but for the client's interest, because the client would then have to pay the defendant's costs from that point forward, which if it's early in the case involves all manner of deposition costs and can wind up with a pyrrhic victory. So that ethical concern I think is really not, that's not a predominating factor in the consideration. If I can have just a minute to address the cross-appeal issue. Judge Ramos found that I had comparable experience and qualifications with the most experienced civil rights practitioners practicing in New York and that my qualifications and experience supported an hourly rate near the top of the range, which was $550 to $700 per hour in cases he cited from 2008 through 2015. The only reason that he reduced my hourly rate was based upon what he perceived as the relative simplicity and short duration of the case. That was legal error. But doesn't Johnson permit that, the Johnson factors? But Perdue v. Kenney and this Court in Mylia v. Metro-North Railroad have said that you may not use the Johnson factor related to complexity and duration as well, implicit in that, in order to evaluate a rate, because that is fully reflected. I thought it was unclear still on the circuit whether the Johnson factors, including that one, can be applied. Am I wrong about that? Yes, Your Honor. What's the case that says that? Mylia v. Metro-North Railroad. And the quote from that is, the novelty and complexity of a case generally may not be used as a ground for adjusting the Lodestar because they are already included in the Lodestar calculation, being fully reflected in the number of billable hours recorded by counsel. Thus, while a district court may not adjust the Lodestar based on these factors, it may use them to determine the reasonable number of hours the case requires. I thought part of the district court's reasoning in reducing the rate was that some of the hours were spent doing ministerial stuff like photocopying. The ministerial is a separate issue, that reduction based upon that. My argument on that is to the extent . . . With regard to that aspect of Arbor Hill, which Judge Walker, of course, authored, I challenge it only on the most narrow grounds. That aspect of Arbor Hill that would allow a court to evaluate the complexity of the case and setting the rate. Beyond that, however, the part of Arbor Hill that would look to how the actual market works, my argument with regard to the ministerial claims is, solo practitioners bill clients for whatever they have to do because there's an opportunity cost. It doesn't matter if I'm writing a brief or arguing an oral argument or if I'm preparing a courtesy copy. It's still hours I can't spend on something else. And it's also entwined within the legal work that has to be done. Doing it also sometimes prevents screw-ups that can be quite problematic and sometimes can't be fixed. And it also can save time because sometimes it's just easier to do something oneself rather than delegating it and trying to explain how to have it be done right. Thank you. Thank you, Your Honor. You have three minutes for rebuttal. Is that right? So is that Johnson factor still alive? It is, Your Honor. I think that the argument that's being made conflates the enhancements and haircuts that are done on top of the Lodestar, which Arbor Hill . . . Exactly. No, that's exactly correct. So the way it works is that the Arbor Hill guidance, which remains good law, has been cited over a dozen times since Purdue. It's good law in the circuit. And what it says is that you take the attorney's hourly rate and you consider case-specific factors. That's what the court said in Arbor Hill. And those case-specific factors include but are not limited to the Johnson factors. And then you multiply that by the hourly rate. You get the Lodestar. And then at that point, you can go up and down on the Lodestar with enhancements and haircuts, but you can't, what Purdue makes clear, do that on things that are already duplicative. So you can't double cut or double increase based on factors that have already been subsumed within the underlying factors. And that's what that quote that counsel read from Milieu says. It says an enhancement. So also, I think, just very briefly on that haircut, to be clear, the district courts and magistrate judges are very good at understanding when it is appropriate and when it's not appropriate to use their discretion to cut into an attorney's overall Lodestar for a haircut when there's administrative amounts billed, so service of process. The courts say, maybe sometimes it's something that's more difficult to explain and delegate. Sometimes it's not. But that's what the district court does. And the district court here exercised its discretion. It should get deference on that. But unlike that, in the fees on fees point, it was an error of law. And I think that there were a few points to clarify on that here. I think counsel suggests that you could separate the reasonable attorney fee into two separate categories, the underlying attorney fee and then the fees on fee. And somehow the fee on fee would dilute or cut into the underlying attorney fee as though these are two separate promises within that contractual language. The contractual language can't support it because Section 1988, which is the basis of the fee, defines a reasonable attorney fee. And that's from there that fees on fees is a part. It's all part and parcel of that same reasonable attorney fee. And that reasonable attorney fee is cut off as of the date of that offer. And so I don't think that there's space in the language to support the reading that counsel suggests. I also want to clarify just really quickly the actual numbers because I know I was a little bit confused earlier. When the city's ultimate offer was for $15,000 and counsel ultimately asked for the $35,000, and in his fee application the court cut it down to $20,000, putting aside the fee on fee point. So apples to apples, it's not that the court raised the amount that the city asked for or that the city offered some very significant amount. It kind of landed right in the middle, which is exactly what the district court is able to do. So well illustrates how the Purdue factor, how post-Purdue the Arbor Hill factors are meant to work. That sliver of fee that was attributable to fee on fees, though, was error because it wasn't permitted and it wasn't contemplated and it rewrote the agreement and it can't be permitted. And thank you, Your Honors, if you have no further questions. Thank you. We reserve decision on this case. It's our last case to be argued, so I'll ask the clerk to adjourn court at this time. Court is adjourned.